# Exhibit B



**V MARINE FUELS GTC**


## STANDARD TERMS AND CONDITIONS FOR THE SALE OF
MARINE BUNKER FUELS, LUBRICANTS AND OTHER PRODUCTS
26 May 2016


**THE BUYER'S ATTENTION IS DRAWN TO CLAUSES IN THESE CONDITIONS WHICH EXCLUDE OR LIMIT THE COMPANY'S LIABILITY, WHICH REQUIRE THE BUYER TO INDEMNIFY THE COMPANY IN CERTAIN CIRCUMSTANCES AND WHICH LIMIT TIME, REFER TO CLAUSES [5,8,9,13,15,16 and 17]**

1.0 **INTRODUCTORY** These are the standard terms and conditions which shall apply to all contracts entered into with **V Marine Fuels DMCC, a corporation regisistered under the DMCC authority in Dubai with registration number DMCC4681, and place of business at Unit 2801-2809, Jumeirah Bay Tower X3, Plot No: JLT - PH2 - X3A,  Jumeirah Lakes Towers, Dubai, UAE. PO Box 625751**.

2.0 **DEFINITIONS**

In these conditions the following words shall have the following meaning:

2.1 **Agreement** The agreement between the Company and the Buyer evidenced by the Standard Terms and the Confirmation. If there is any conflict between the Standard Terms and the Confirmation, the terms of the Confirmation shall prevail

2.2 **Basic Cost** Unit Price multiplied by the number of units delivered.

2.3 **Buyer** The person or entity so identified in the Confirmation and shall include any agent, principal, associate, manager, partner, servant, parent, subsidiary, owner or shareholder thereof and any Vessel (as defined in 2.18) and/or Vessel owner and/or charterer to which Product has been delivered.

2.4 **Company** means **V Marine Fuels DMCC**, its servants, agents, assigns, sub-contractors and any and all other persons acting under the Company's instructions in fulfilment compliance or observance of this Agreement unless the context otherwise permits.

2.5 **Confirmation** The Company's written confirmation of stem

2.6 **Delivery** As set out in Clause 8

2.7 **Due Date** The date specified in the Confirmation for payment of the Price or in the absence of such date the date of delivery. In respect of Further Costs the Due Date shall be seven days from notification to the Buyer of such costs.

2.8 **Further Costs** As set out in Clause 11.2

2.9 **Notice of Claim** Written notice of any claim or potential claim by the Buyer to the Company

2.10 **Physical Supplier** The person or entity that physically supplies the Product to the Vessel and shall include the Physical Supplier's servant, agent, successors, sub-contractors and assigns. The Physical Supplier may be the Company.

2.11 **Place of Supply** The port or other readily identifiable geographical location specified in the Confirmation wherein or adjacent to which is the Point of Delivery.

2.12 **Point of Delivery** The precise place at which delivery is to be effected as provided in the Confirmation or as thereafter confirmed, advised or revised by the Company or the Physical Supplier and which may be a berth, mooring, anchorage or other point within, adjacent to or associated with the Place of Supply.

2.13  **Price** The Basic Cost and Further Costs .

2.14  **Product** The fuels, oils, lubricants, goods, items, equipment and materials of whatever type and description as specified in the Confirmation.

2.15  **Sanctions** means United States sanctions, European Union sanctions or any other applicable economic or trade sanctions.

**2.16**  **Standard Terms** These standard terms and conditions of the Company

2.17  **Unit** One metric tonne or such other measurement as the Confirmation may specify.

2.18  **Unit Price** The rate of cost in United States Dollars (or such other currency as specified in the Confirmation) per metric tonne (or such other unit of measurement specified in the Confirmation) of Product specified in the Confirmation.

2.19  **Vessel** The vessel, ship, facility, tank, container, or craft nominated in the Confirmation to receive Product.

2.20  **Vessel Interests** The owners and/or managers and/or Master of the Vessel (as defined in 2.19).

2.21  **Working days** Monday to Friday inclusive but excluding all public and bank holidays in the United States and any other day designated as non-working from time to time as notified in writing by the Company to the Buyer.

3.0  **HEADINGS** the use of headings and sub-headings is for convenience and elucidation only and do not form part of the Standard Terms.

4.0  **ENTIRETY AND VALIDITY** The Standard Terms together with the Confirmation constitute the entire Agreement and supersedes all prior oral or written agreements, representations and/or warranties. No derogation, addition or amendment to the Agreement shall be of any effect unless and until expressly confirmed in writing by the Company. If any provision of the Agreement shall to any extent be invalid or unenforceable the remainder of the Agreement shall not be affected thereby.

5.0  **FORCE MAJEURE** The Company shall not be liable for any loss, damage, costs or expenses arising from the Company's failure to fulfil or comply with any term or condition of the Agreement if fulfilment or compliance has been delayed, hindered or prevented by any circumstance whatsoever which is not within the immediate and reasonable control of the Company including, but without limiting the generality of the foregoing, any acts of God, fires, floods, perils of sea, war (declared or undeclared), hostilities, embargoes, Sanctions, accidents, strikes, lockouts or labour disputes or reasonable apprehension thereof, any government order, request or restriction, or acts in compliance with requests of persons purporting to act on behalf of a government authority, or any other similar causes, any limitation restriction or interruption to existing or contemplated sources of supply of Product and/or the means of supply and/or the means of delivery.

6.0  **BROKERS AND AGENTS**

6.1  Unless the person or entity with whom the Company is corresponding specifically declares in writing to the Company prior to dispatch by the Company of the Confirmation that it is not the Buyer and at the same time provides in writing to the Company the full name and address of the Buyer then the person or entity with whom the Company is corresponding shall be deemed to be the Buyer.

6.2  Without prejudice to the provisions of Clause 6.1, in the event that the person or entity with whom the Company is corresponding is an agent of the Buyer then such person or entity shall be jointly and severally liable with the Buyer to perform the Buyer's obligations under the Agreement notwithstanding that such person or entity purports to contract as a mere agent.

6.3   All sales made under these Standard Terms are made to the registered owner of the Vessel, in addition to any other parties that may be listed as Buyer in the Confirmation. Any Product ordered by an agent, management company, charterer, broker or any other party is ordered on behalf of the registered owner of the Vessel and the registered owner of the Vessel is jointly and severally liable as a principal for payment of the Price for the Product.

7.0   **ASSIGNMENT** The Buyer shall not assign its interest in the Agreement without the prior written approval of the Company. The Company may assign alternatively, novate the Agreement and shall thereafter give notice to the Buyer. By entering into the Agreement the Buyer hereby consents to any subsequent novation.

8.0   **DELIVERY**

8.1   **Allocation** If the Company at any time and for any reason believes that there may be a shortage of Product at the Place of Supply it may allocate its available and anticipated supply of Product among its buyers in such a manner as it may in its absolute discretion determine. Any such allocation shall constitute full and proper performance of the Company's obligations.

8.2   **Tolerance** In respect of the quantity agreed upon the Company shall be at liberty to provide, and the Buyer shall accept a variation of plus or minus 5% from the agreed quantity, with no other consequence than a corresponding variation to the invoice from the Company, unless specified otherwise in the confirmation. If Buyer has purchased a Fixed Forward Price contract (FFP) from the Company the specific conditions pertaining to Buyer's obligations with respect to minimum quantity liftings for the FFP continue to apply.

8.3   **Restrictions** The Company shall not be required to deliver Product into any Vessel or other places which are not regularly used for storage of bunkers or lubricants or other products as the case may be and shall not be required to deliver any Product for export for which a government permit is required and has not been obtained.

   8.3.1   In the event that the Buyer fails to comply with Clause 8.3, the Buyer shall reimburse the Company for any and all damages incurred by the Company relating thereto.

8.4   **Means of delivery** Delivery shall be effected in one or more consignments at the Point of Delivery by such means as the Company shall deem appropriate in the circumstances.

8.5   **Barging** In the event of delivery by barge the Buyer shall, as its own expense, provide a clear and safe berth for the barge(s) alongside the Vessel's receiving lines and shall provide all necessary facilities and assistance required to effect delivery. The Company shall be under no obligation to make deliveries when, in it's sole opinion, a clear and safe berth, position or anchorage is not available. The Buyer shall pay and indemnify the Company against all claims, costs, losses and expenses in respect of any loss, damage or delay caused by the Vessel, the Vessel's charterer, the Vessel Interests and/or the Vessel's personnel to any barge and/or its equipment and injury and/or death caused by the Vessel, the Vessel's charterer, the Vessel Interests and/or the Vessel's personnel to any of the personnel effecting delivery in the course of or in connection with delivery of Product.

8.5.1   In the event that the delivery is not commenced or is terminated pursuant to this clause 8.5, the Buyer shall pay for any bunkers supplied and shall reimburse this Company for any and all damages incurred by the Company relating thereto.

8.6   **Connection/Disconnection** The Buyer shall be responsible for making all connections and disconnections between the pipelines or delivery hoses and the Vessel's intake line and shall render all other necessary assistance and provide sufficient tankage and equipment to receive promptly each and every consignment of the delivery. The Buyer shall be responsible for ensuring that Product is delivered at a safe rate and pressure and that all equipment utilised is in a safe and satisfactory condition. In no case shall the Company be liable for any damage or delay resulting from causes

beyond its control or avoidable by reasonable care on the part of the Buyer, the Vessel, the Vessel's charterer or the Vessel Interests.

8.7 **Delivery** shall be deemed complete when the Product has passed the flange connecting the Physical Supplier's delivery facilities with the Vessel provided by the Buyer and/or, where appropriate, has passed the Vessel's rail and/or Point of Delivery.

8.8 **Title** Ownership of the Product shall pass to the Buyer only after the Price has been received by the Company as provided in Clause 12.1.

    8.8.1 Until such time as the Price is received by the Company the person or entity in possession of the Product delivered shall hold the Product as a mere bailee and shall hold the Product on behalf of the Company and to the Company's order. For the avoidance of doubt, where a mortgagee bank enforces any rights against the vessel and becomes a mortgagee in possession of the product then as bailee the mortgagee bank is liable to the company for fulfilment of the Agreement.

    8.8.2 In the event that the Bunkers have been mixed with other bunkers on board the Vessel, the Seller shall have the right to trace its proprietary interest in the Bunkers into the mixed bunkers and/or a right of lien to such part of the mixed bunkers as corresponds to the quantity or net value of the Bunkers delivered.

    8.8.3 Where, notwithstanding these conditions, title in and to the Bunkers delivered has passed to the Buyer and/or any third party before full payment has been made to the Seller, the Buyer shall grant a pledge over such Bunkers to the Seller. The Buyer shall furthermore grant a pledge over any other Bunkers present in the respective Vessel, including any mixtures of the delivered Bunkers and other bunkers. Such pledge will be deemed to have been given for any and all claims, of whatever origin and of whatever nature that the Seller may have against the Buyer.

This clause 8.8 (and it's sub-clauses) only shall be governed exclusively by English law.

8.9 **Risk** The Company's responsibility for Product shall cease and the Buyer shall assume all risks and liabilities relating thereto, including loss, damage, deterioration, depreciation, contamination, evaporation or shrinkage of Product and responsibility for loss, damage and harm caused by pollution or in any other manner to third parties at the time Product reaches the Physical Supplier's end of the delivery hose or pipeline connecting Physical Supplier's delivery facilities to the Vessel's receiving facilities, or in the event that the Buyer arranges its own transportation, the receiving facilities of the barge or coastal tanker nominated by the Buyer. The Buyer agrees to indemnify without limit the Company in respect of any liability, loss, damages, costs, expenses, claim or demand arising in connection with the Product after risk has passed to the Buyer.

8.10 **Measurement** The quantity of Product delivered under the Agreement shall be measured by and at the Physical Supplier's option by one of such generally recognised methods of measurement as is appropriate in the circumstances as set out in Clause 13.4 below.

8.11 **Specification** The Product to be delivered shall be as specified in the Confirmation and in respect of marine bunkering and lubrication products, save where more precisely specified in the Confirmation, these shall be of the Company's commercial grades of product as currently offered generally to its buyers at the time and Point of Delivery for marine bunkering or lubrication purposes. No other warranties, express or implied as to quality or fitness for any purpose, are given or form part of the Agreement.

8.12 **Compatibility and Segregation** Responsibility for establishing compatibility of Product delivered with any other product or products and for segregating or co-mingling the same rests solely with the Buyer.

8.13 **Substitution** The Company may discharge its obligation to deliver Product as specified in the Confirmation by supplying in substitution product of a different grade and/or brand name provided always that such substitute product is of an equivalent or superior specification to that specified in the Confirmation.

8.14 **Availability** Subject to the availability of Product, the availability of facilities at the Place of Supply and Point of Delivery, and the customary priority and to the Buyer giving notice in accordance with Clause 8.17, the Company will use its best endeavours to ensure that Product is delivered promptly upon the Vessel's arrival but the Company shall not be responsible for any loss, expense, damage or increased costs incurred in consequence of the Vessel not being supplied promptly or otherwise being delayed or restrained for any reason whatsoever.

8.15 **Time** The Buyer is responsible for ensuring that the Vessel is ready to receive Product at the Point of Delivery on the expiry of the notice given in accordance with Clause 8.17.

8.16 **Delay**

    8.16.1   In the event that the Vessel's arrival at the Point of Delivery is delayed or likely to be delayed the Buyer must so advise the Company and the Vessel's agent at the Place of Supply and must ensure that the Vessel's agent advises the Physical Supplier accordingly.  At the Buyer's request the Company will use its best endeavours to supply a delayed Vessel on the terms originally agreed but reserves the right to pass on to the Buyer all additional costs including increased Basic Cost arising from the Vessel's delayed arrival.

    8.16.2   Notwithstanding anything else herein, should the Vessel arrive outside of the notified time range pursuant to the Confirmation, the Agreement shall be considered null and void unless the Company elects to affirm the Agreement or to accept the new arrival date and time of the Vessel as the basis of a new contract for which a new price can be agreed upon with the Buyer.

    8.16.3   Notwithstanding anything elsewhere herein, neither Seller nor the Physical Supplier shall be liable for any demurrage or loss incurred by the Buyer or for any delay in supply or for any other losses and/or damages whatsoever that may be suffered by the Buyer or the Vessel receiving the Product where such demurrage, delay and/or losses or damages arise as a result of congestion and/or adverse weather at the place of loading. Buyer's sole remedy in the event of any demurrage, delay or other losses or damages due to congestion or adverse weather at the place of loading shall be to cancel the sale/delivery.

8.17 **Notice and Other Delivery Requirements** The Buyer must give in writing to the Physical Supplier not less than 72 hours general notice and 48/24/12/6 hours specific notice of the Vessel's arrival time and readiness to receive Product at the Point of Delivery with it's exact geographical location, with a copy of the notices to the Company (if it is not the Physical Supplier). Notice must be given during the Physical Supplier's normal business hours. Notice given outside these hours will be deemed to have been given at 08.00 on the first working day thereafter. Should the Buyer fail to give notice as required the Company reserves the right to pass on to the Buyer all additional costs which may arise.  Furthermore it is in all circumstances and on all occasions the responsibility and duty of the Buyer to ascertain and where appropriate to comply with:

    8.17.1   the precise requirements of the Physical Supplier and any other person, body or authority in respect of the giving of notice of the Vessel's time of arrival at the Point of Delivery, and

    8.17.2   the exact location of the Point of Delivery, and.

    8.17.3   any particular requirements to enable delivery to be effected as efficaciously as possible.

8.18 It is the responsibility and duty of the Buyer to instruct its agent at the Place of Supply to liaise with the Physical Supplier so as to ensure compliance with the provisions at 8.17.1 to 8.17.3 inclusive.

    8.18.1   Any charges and/or damages incurred by the Company which result from Buyer's or its agent's failure to provide sufficient notice set forth in Clause 8.17, and information in respect of any delays caused by the Vessel, the Vessel's charterer, the Vessel Interests and/or the Vessel's non compliance with any pertinent port authority or government regulations which are not part of this Agreement, shall be chargeable to the Buyer who expressly agrees to pay any such charges and/or damages.

8.19   **Information** In response to a specific request for information from the Buyer in respect of the Point of Delivery the Company will use its best endeavours to obtain or provide the information requested. Whilst every care will be taken to ensure that such information is accurate and up-to-date it is furnished on the strict understanding that it is not a contractual representation and that no responsibility whatsoever will attach to the Company for its accuracy and veracity.

8.20   **Environmental Protection** Without prejudice to Clause 8.9 the Company may at any time without notice take any steps which it considers necessary to protect the environment from damage arising from spillage or transport of Product. Any action so taken shall be on behalf of and at the expense of the Buyer and the Buyer shall indemnify the Company for any loss, costs, damages or expense incurred by the Company for any such steps taken by the Company.

8.21   **Safety** If at any time prior to or during Delivery the Company reasonably determines that the environment for Delivery is unsafe or has the potential for a spill described in Clause 8.20 occurring due to conditions including but not limited to, unsafe working environment, lack of or insufficient practices/procedures, facilities, use of tools or equipment and incompatible configuration or bad weather, the Company reserves the right not to commence Delivery or to terminate the supply immediately without prior notice to the Buyer at any time and without liability.

9.0    **CANCELLATION AND BREACH** In the event of the Buyer at any time cancelling a request for Product or the Vessel failing to take delivery of part or all of the requested Product for any reason, regardless of fault or causation, the Company shall have the right to pursue a claim against both the Buyer and the Vessel and the Buyer and the Vessel shall be jointly and severally liable for all loss and/or damage and/or expense thereby suffered including loss of profit and, (where the Company has engaged in derivative hedging instruments to offer a fixed price to the Buyer for the Product), loss and damage incurred arising from the Company's purchase of derivative instruments to include, but not limited to, the premium cost of such instruments, net payments made by the Company to the instrument writer and administrative fees. The Company shall be entitled to charge the Buyer as a minimum for a cancellation by Buyer the greater of USD 5,000 or USD5.00 per metric tonne not lifted as liquidated damages.  Such liquidated damages are intended to represent estimated actual damages and are not intended as a penalty. The Company may treat any other breach by the Buyer of any express term of the Agreement as a breach of a condition and it may at its discretion accept the breach, treat the Agreement as repudiated and seek such remedies as it considers appropriate. However the provisions of Clauses 15.0, 16.0 and 17.0 shall survive the termination of the Agreement in any event.

10.1   **LIENS** Where Product is supplied to a Vessel, in addition to any other security, the Agreement is entered into and Product is supplied upon the faith and credit of the Vessel. It is agreed and acknowledged that a lien over the Vessel is thereby created for the Price of Product supplied and that the Company in agreeing to deliver Product to the Vessel does so relying upon the faith and credit of the Vessel. The Buyer, if not the owner of the Vessel, hereby expressly warrants that he has the authority of the owner to pledge the Vessel's credit as aforesaid and that he has given notice of the provisions of this Clause to the owner. The Company shall not be bound by any attempt by any person or entity to restrict, limit or prohibit its lien or liens attaching to a Vessel unless notice in writing of the same is given to the Company before it sends its Confirmation to the Buyer.

10.2   Buyer warrants that the Company shall have the right to assert a maritime lien in rem, attachment or any other claim against the Vessel to which the Product is delivered for the Price of the Product, including but not limited to any taxes billed on the Delivery of the Product or otherwise, any interest due thereon including on overdue payments and all associated recovery costs incurred by the Company should the Buyer fail to pay the Company in accordance with the Agreement.  Such remedies shall be in addition to, and not in limitation of, any other remedies available to the Company at law, in equity or herein.  Buyer warrants that the Product purchased pursuant to the Agreement is for the operation of the receiving Vessel and that Vessel only.

10.3 Before the issuance of the Confirmation by the Company, Buyer shall provide to the Company the full contact details of the Vessel Interests.  Buyer authorizes the Company to contact the Vessel Interests at the Company's sole option, in advance of Delivery of the Product to put the Vessel on notice that the sale and delivery of the Product is made on the basis of the financial credit of the Vessel, as well as on the account of the Buyer and on the terms and conditions of this Agreement.  The Company's rights against the Vessel or against the Buyer shall not be limited if the Company decides not to contact the Vessel Interests.  Should the Vessel Interests provide notice to the Company that the financial credit of the Vessel is denied for any reason whatsoever before Delivery of the Product to the Vessel is complete, the Company shall have the right elect that no credit be granted to the Buyer and the Product shall be paid for by the Buyer in cash or an equivalent acceptable to the Company prior to Delivery.

10.4 Any notice by the Buyer that a maritime lien, attachment or any other claim against the Vessel may not be created due to a prohibition of lien clause or similar clause in the Buyer's charter party, or for any other reason, including but not limited to insolvency proceedings of any kind, must be given to the Company in the initial purchase order for the Product.  It is agreed and acknowledged by the Buyer that the Buyer is under a continuing duty to notify the Company of such a notice of restriction until the Buyer has paid the Company the Price for the Product in full.  In the event that the Buyer provides such notice of restriction, no credit can be granted to the Buyer and the Buyer shall pay the Company for the Product in cash or an equivalent acceptable to the Company prior to Delivery.  Any notice of such restriction given by the Buyer, its parents, subsidiaries, affiliates, agents and/or assigns, the Vessel's charterer, the Vessel Interests, the Vessel's personnel or any other person later than in the purchase order for the Product (including any attempted wording on the delivery ticket or otherwise) shall not modify this Agreement except that any granting of credit by the Company may be rescinded upon the Company's receipt of such notice of restriction, in which case full payment shall be due forthwith from the Buyer.

11.0 **THE PRICE**

11.1 **Unit Price** As the cost of marine bunkering products is volatile the Company reserves the right to increase the Unit Price at any time before delivery. Where possible, prior notice of the increase will be given during the Seller's normal business hours, Monday to Friday, inclusive but excluding national and bank holidays, 09.00-17.30 Singapore time. Notice given outside these hours will be deemed to have been given at 09.00 on the Sellers first working day thereafter. In such event the Buyer may forthwith give written notice to the Company of cancellation of the Agreement. If no such notice is received within one hour of the Company advising the Buyer of the increase of the Unit Cost the Buyer shall be deemed to have agreed to the revised Unit Price and the Agreement so revised shall remain in full force and effect.

11.2 **Further Costs** In addition to the Basic Cost of the Product the Buyer shall pay for any charges raised in respect of taxes, freight, barge, vehicle, wagon, clean up costs, overtime, or other like payments, insurance, pilotage, port dues and any and all other like costs and expenses incurred by or charged to the Company. Such charges, costs and expenses will be passed on to the Buyer at the rates charged to the Company as and when they are advised to the Company and together with the Basic Cost shall for all purposes constitute the Price due from the Buyer to the Company for the Product supplied.

11.2.1 If Buyer is entitled to purchase any Product free of any taxes, duties or charges pursuant to local law, Buyer shall promptly, but in any event not later than five (5) business days following the completion of Delivery, provide the Company with a valid exemption certificate for such purchase.

11.3 **Notice of the Price** The Company will give notice of the Price to the Buyer as soon as reasonably practicable after Delivery. In certain circumstances the Company will give notice of the Price in instalments. Where notification of the Price is given in instalments each element of the Price so notified shall when due constitute an enforcement debt due from the Buyer to the Company. Notice of the Price may at the Company's option be provided by invoice sent by post, fax, telex, email or as otherwise provided herein or as agreed.

11.4 **Proof of Delivery** The Buyer or his representative should attend Delivery and obtain at that time all information relating to Delivery including the exact quantities and precise specification of Product delivered. Unless otherwise requested by the Buyer prior to despatch by the Company of the Confirmation, the Company shall be under no obligation at any time to produce to the Buyer any evidence of Delivery to the Vessel. It is expressly agreed that the furnishing by the Company of Proof of Delivery is not a pre-requisite to payment of the Price.

12.0 **PAYMENT** In most cases special payment terms will have been agreed and will be set out in the Confirmation.

12.1. Each of the following terms apply unless the Confirmation otherwise provides:

12.1.1 Payment of the Price will be made in United States dollars, or such other currency as specified in the Confirmation, in full without set off and/or deduction for any reason whatsoever so as to ensure that the Company receives value for the payment in cleared funds on or before the Due Date.

12.1.2. Timely payment is of the essence of the Agreement.

12.1.3 In respect of all sums which are overdue the Buyer shall be liable to pay to the Company interest calculated at 2% per calendar month pro-rated and compounded on a daily basis from the Due Date until receipt by the Company of sufficient cleared funds. Accrued interest and costs and/or expenses incurred by the Company in requesting payment of outstanding amounts will be added at monthly intervals to and become part of the outstanding sum. In the event that this contractually agreed rate of interest is in excess of that permitted by relevant law there shall be substituted the maximum rate so permitted.

12.1.4. Payment will be made by way of telegraphic, telex, swift or rapid electronic transfer to the bank and account specified in the Company's invoice. All bank and other charges if any incurred in effecting remittance will be for the account of the Buyer. Advice of remittance including identifying references should always be given to the Company. If payment is not received as a result of the Buyer not complying with the payment instructions, then the Buyer will pay immediately, upon written request, all sums due including interest and all other charges.

12.1.5 Payments received by the Company from or on behalf of the Buyer notwithstanding any specific request to the contrary will be applied in the following order in diminution or extinction of:

12.1.5.1 accrued interest and costs and/or expenses in respect of transactions for which the principal sum has been previously paid.

12.1.5.2. accrued interest and costs and/or expenses arising from all other transactions.

12.1.5.3 any principal sum due and outstanding commencing with the oldest and proceeding chronologically thereafter to the most recent.

12.1.5.4. any principal sum which the Company knows or reasonably expects will fall due at a future date.

12.2 The Company may in good faith vary, amend, withdraw, substitute or add to the terms relating to payment at any time in the course of a transaction in such manner as it shall in its absolute discretion consider necessary to protect its interests.

12.3 If at any time the reputation, standing, creditworthiness, liquidity or solvency of the Buyer or any subsidiary, parent, associate or affiliate thereof should give the Company reasonable cause for concern, and/or if any amount due remains outstanding for a period of 7 days from the Due Date, the Company may without prejudice to all other rights and remedies which it may have give notice to the Buyer that credit facilities from the Company to the Buyer are withdrawn or suspended as the case may be and all sums outstanding and/or due for payment at a future date shall thereupon fall due for immediate payment.

12.4   In the event that the Buyer or any subsidiary or parent thereof shall commit an act of bankruptcy or shall be the subject of proceedings judicial or otherwise commenced for debt, bankruptcy, insolvency, liquidation or winding up the Company may forthwith determine the Agreement.

12.5   The full legal and other costs and expenses incurred by the Company including those of the Company's own legal and credit departments and of other lawyers in connection with any breach by the Buyer of any term of the Agreement including but not limited to actions for debt shall be for the Buyer's account and shall for all purposes form part of the Price due from the Buyer to the Company for Product supplied.

13.0   **CLAIMS, DISPUTES AND PRECAUTIONS**

13.1   **Notification:** Written Notice of Claim must be given to the Company within the time limit specified in Clauses 13.4 (quantity claims and disputes), 13.5 (quality claims and disputes) and 13.6 (all other claims and disputes) below or as specified in the Confirmation and any claim not notified within the specified time limit shall be deemed waived and absolutely barred and the Company shall be discharged of all liability whatsoever and howsoever arising. It is the Buyer's responsibility to ensure that notice of claim is received by the Company whose confirmation of receipt should always be sought. Regardless of whether a claim or dispute has risen or is anticipated the Buyer must give Notice of Claim forthwith to the Company of any discrepancy, error or omission present in any form or document tendered, submitted or produced by the Physical Supplier and of any unusual occurrence relating to the delivery.

13.2   **Sufficiency of Information:** The Notice of Claim must contain sufficient information to enable the Company to identify the relevant transaction, the nature of the complaint and the loss or damage alleged. Any Notice of Claim which does not give such sufficient information will not be valid for the purpose of compliance with the relevant time limit. In addition the Buyer must provide a full and complete response to any and all questions, enquiries and requests made of it by the Company concerning the claim and matters relating thereto.

13.3   **Categories** Claims fall into 3 categories:

   13.3.1.   Quantity claims and disputes

   13.3.2.   Quality claims and disputes

   13.3.3.   Other claims and disputes

13.4.   **Quantity Claims and Disputes** Save for safe access to the Physical Supplier's facilities not being available, the Buyer or Buyers representative must attend all measurements performed by the Physical Supplier both prior to and after supply. In the absence of full attendance the Buyer shall not be entitled to complain of an incorrect measurement of the volume of Marine Fuels delivered. Any discrepancies must be presented by the Buyer or Buyer's representative to the Physical Supplier Immediately upon identification at the time of delivery by issuing a Letter of Protest and if possible endorsing the Bunker Delivery Receipt, and the Company must immediately be contacted both verbally and in writing to allow it to take all action necessary (including arranging for a surveyor to attend the Vessel if deemed necessary), time being of the utmost essence in this regard. The Buyer shall ensure that the Vessel's crew including the master shall assist the Company in this regard, including providing necessary access and assistance to the surveyor if appointed, as well as responding timeously to any requests for information including Vessel data logs.  In the absence of a Letter of Protest or endorsed Bunker Delivery Receipt in accordance with this clause the Company shall not be liable for any claims for discrepancies, including but not limited to claims for short delivery.

   13.4.1   The Company shall not be liable for claims for short delivery based upon figures obtained by measuring Product in the Vessel's tanks.

   13.4.2   The time limit for receipt by the Company of Notice of Claim in a quantity dispute is 15 (fifteen) days from the date of delivery or such shorter period as may be specified in the Confirmation.

13.5 **Quality Claims and Disputes.** It is the Buyer's sole responsibility to ensure that Product tendered for delivery is fit for use by the Vessel and is delivered into the correct tanks.

13.5.1 It is the duty of the Buyer to instruct the Physical Supplier to take three representative samples of every consignment and load of the Product on commencement of delivery in accordance with the custom at the Point of Delivery. Sample point to be closest to Vessel's bunker manifold or such other location as set by the Company. The three representative samples must be sealed and labelled and the label signed by a representative of the Physical Supplier and by an officer of the Vessel and/or other senior representative of the Buyer. One set of the Physical Supplier's samples shall be retained by the Buyer and one set by the Physical Supplier, each to be retained for a minimum of 30 (thirty days) after delivery to the Vessel. The third sample shall be retained by the Vessel in accordance with the provisions of MARPOL 73/78, Annex VI. The third sample may only be used for the purposes of confirming the sulphur content of the marine fuel and such other matters as are specifically set out in Marpol Annex VI, Regulation 18.

13.5.2 All documentation must be checked by the Buyer or the Buyer's representative and be in order and any discrepancies noted on the Physical Supplier's delivery receipt before signing and stamping.

13.5.3 In the event of the Buyer having grounds to believe that the Product supplied does not accord with the description in the Confirmation or is defective the Buyer shall immediately:

13.5.3.1 take all reasonable steps to mitigate the consequences of having been supplied with possibly defective or incorrect product.

13.5.3.2 give immediate notice with full details of the possibly defective or incorrect Product to the Company together with the Vessel's position, destination and ETA, the quantities and locations of all bunkers on board the Vessel/stored in the Vessel, the rate and quantity of consumption since delivery and the location of the Vessel immediately prior to delivery of the Product, and for each of the three preceding deliveries to the Vessel, the quantity, quality and specification of Product supplied, the place and date of supply and the name of the supplier;

13.5.3.3 inform the Company of the whereabouts of the Buyer's set of samples

13.5.4 It is a pre-condition to the Company's liability for any quality claim that at the time Notice of Claim is given the set of samples retained by the Physical Supplier are available for analysis by a reputable independent testing laboratory, approved by the Company, in accordance with established procedures and the analysis is carried out in the presence of a representative of the Company. The Buyer hereby acknowledges that the sealed samples retained by the Physical Supplier are representative of the Product delivered and that the Company has no duty to consider any other independently produced samples. The results of the analysis shall be final, binding and conclusive on all parties.

13.5.5. If it is alleged that any equipment or machinery has been damaged by incorrect or defective Product full details must be given to the Company at the earliest opportunity and the item allegedly damaged must be preserved and made available for inspection on demand at any reasonable time or times by the Company and/or its representative.

13.5.6 The Buyer to immediately on making a claim give the Company's representative a reasonable opportunity to inspect the Vessel, including, without limitation, its engines, fuel tanks, equipment, logs, records and copies of communications including communications between the Buyer and the Vessel. Buyer shall ensure that Vessel's crew assist the Company's representative in his enquiries and shall respond to requests in timeous fashion.

13.5.7 The time limit for receipt by the Company of Notice of Claim in respect of quality and/or claims arising out of quality is 15 (fifteen) days from the date of delivery or such shorter period as may be specified in the Confirmation, failing which any claim shall be time barred.

13.5.8   Within 45 days of delivery a detailed written claim together with all available supporting documentation substantiating each and every constituent part of the claim (including but not limited to an analysis report prepared by independent inspectors/laboratory of the Buyer's retained quality sample and all correspondence to/from the fuel testing organization used by Buyers) to be submitted to the Company, failing which Buyer's claim to be time barred.

13.6   **Other Claims and Disputes:** in all other cases Notice of Claim must be given to the Company as soon as reasonably possible and in any event no later than 28 days after delivery. If the Confirmation provides for a shorter period such shorter period shall apply.

13.7   **Proceedings:** Without prejudice to the provisions of Sub-Clauses 13.1 above the Company shall in any event be discharged of all liability whatsoever howsoever arising in respect of any Product and/or supplies and/or services provided to the Buyer or which the Company has undertaken to supply and/or provide unless suit be brought and written notice thereof given to the Company within 90 days from the date of delivery and/or date of the Company's undertaking.

14.0   **WAIVER** The failure by any party to the Agreement to enforce any right against any other party shall not be construed as a waiver of that right or in any way affect the validity of the Agreement. In particular, the granting by the Company of any additional time to make payment or the waiving or reducing of any interest or other charge shall not prevent the Company at any time thereafter from relying upon its strict contractual rights.

15.0   **INDEMNITY** The Buyer hereby indemnifies the Company against any claim for injury and/or death occurring to any person and/or all damage and/or damage to any property and against all actions, suits, claims, demands, costs, charges or expenses arising in connection therewith to the extent that the same shall have been occasioned by the negligence or default of the Buyer, his servants, representative, or agents or any third party in the course of performance of or arising out of or in connection with the Agreement.

16.0   **LIABILITY** Save as provided in Clause 13.0 to 13.7 (inclusive), the Company shall not be liable to the Buyer for any loss or damage including loss of profit, loss of time including without limitation hire, demurrage or detention, or any other consequential loss whatsoever arising from any cause whatsoever whether in contract, tort or otherwise including the negligence of the Company, its servants, agents or sub-contractors.

17.0   **COMPENSATION** Without prejudice to the provisions of Clause 16.0, in the event that the Company is found to be liable to the Buyer, the total amount payable by way of compensation other than in respect of personal injury or death shall not exceed the Price (excluding Further Costs, interest and other charges payable by the Buyer) of the Product supplied under the Agreement. It is a pre-condition to the payment of any compensation by the Company that all sums due to the Company from the Buyer are first paid and settled.

18.0 **INSURANCE** The Buyer is responsible for effecting and maintaining in force adequate insurance which will fully protect the Buyer, the Company and all third parties from all risks, hazards and perils associated with or arising out of or in connection with the Agreement and delivery.

19.0 **LICENCES PERMITS AND APPROVALS** The Buyer is responsible for obtaining all necessary permits, licences and approvals required to enable both parties to execute all of their obligations under the Agreement.

20.0 **WRITTEN, IN WRITING and NOTICE** Any requirement for written communication including the giving of any notice may be fulfilled by the use of letter-post, courier, telex, facsimile transmission, email or any other medium which produces a tangible result for the intended recipient. The communication shall be deemed to have been given and received upon completion of transmission of any electrical or electronic medium, within two working days of dispatch for first class inland letter-post, within five working days of dispatch for second class inland letter post and air mail and on the expiry of the declared or guaranteed time for delivery of any courier or monitored service.

21.0 **DISPUTE RESOLUTION** Except as otherwise provided herein, the Buyer hereby irrevocably submits to the exclusive jurisdiction of the United States District Court for the Southern District of New York or, if such court does not have jurisdiction or shall not accept jurisdiction, to any court of general jurisdiction in and for the County of New York in the State of New York for the resolution and determination of any dispute arising out of, or in connection with, this Agreement.  The Buyer also hereby irrevocably waives any objection to such suit based upon forum non conveniens (or any foreign equivalent) and/or venue and any right to a trial by jury in any legal proceeding arising out of, or in connection with, this Agreement. At the Company's sole option, the Company may commence any legal action against the Buyer, its parents, subsidiaries, affiliates, agents and/or assigns in any court of competent jurisdiction.

21.1 The Buyer hereby expressly and irrevocably waives any and all right to commence any legal action in any other forum against the Company arising out of, or in connection with, this Agreement.

21.2 The Company may also elect, and upon the Company's election the Buyer hereby agrees, to submit any claim or dispute arising out of, or in connection with, this Agreement or breach thereof, to final and binding arbitration to be conducted in the City of New York in accordance with the Commercial Rules of the American Arbitration Association, which shall include the International Commercial Dispute Resolution rules and procedures if the Buyer is a foreign entity.

- 21.2.1 The arbitration shall be settled by a panel of three arbitratiors, one chosen by each party and the third nominated by the two arbitrators so chosen.  The decision of the three arbitrators, or two of the three arbitrators, shall be final and binding on the Buyer and the Company. Judgment upon the award rendered by the arbitrators may be entered in any court of competent jurisdiction.
- 21.2.2 The arbitrators shall award to the prevailing party, as determined by the arbitrators, all of its costs and fees including but not limited to, administrative fees, travel expenses, out-of-pocket costs such as copying, telephone and legal research, court costs and attorneys' fees.

22.0 **COUNTER-SECURITY** The Buyer hereby expressly and irrevocably waives any and all right to demand counter-security from the Company in response to any claim, counterclaim or otherwise, whether brought in court or by way of a demand for arbitration.

23.0 **AGENT FOR SERVICE OF PROCESS** Buyer agrees and acknowledges that Buyer has no agent appointed for service of process in the State of New York or in any State adjacent to the State of New York, including New Jersey, Connecticut and Vermont and for the purposes this Agreement the Buyer hereby revokes all such prior appointments.  In the event that the Company commences legal proceedings against the Buyer pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, the Buyer hereby expressly waives any defense that the Buyer is present in a convenient adjacent jurisdiction to any jurisdiction where the Company has commenced legal proceedings against the Buyer or where the Company is located.

24.0 **GOVERNING LAW**  With the exception only of paragraph 8.8 (concerning title retention) above, this Agreement shall be governed by and construed in all parts by the General Maritime Law of the United States of America and the Commercial Instruments and Maritime Lien Act ("CIMLA"), 46 U.S.C. 31301 et seq. (referred to collectively as the "General Maritime Law of the United States").  In the event that the General Maritime Law of the United States is silent on the disputed issue(s), the law of the State of New York (excluding conflict of law rules which may result in the application of the laws of another jurisdiction) shall apply.  No term of the United Nations Convention on Contracts for the International Sale of Goods as part of United States law, or otherwise, however, shall apply related to this Agreement

24.1   The General Maritime Law of the United States of America shall apply to any determination of the existence of a maritime lien, attachment or any other maritime claim, regardless of the country in which the Agreement is made, where the Product is delivered or where the Company commences any legal action against the Buyer.

24.2   To the extent the Buyer is a "foreign state" or "agency or instrumentality of a foreign state" under the United States Foreign Sovereign Immunities Act or otherwise, Buyer expressly waives any immunity that it has or may have from attachment in aid of execution or from execution, and/or from any in rem or other arrest of any vessel to which Seller has provided Products or otherwise. This waiver may not be withdrawn except through a writing signed which both Buyer and Seller sign with express authority for each.

25.0   **SANCTIONS**

25.1   The Buyer represents, warrants and undertakes that:

25.1.1   it shall at all times comply with Sanctions applicable to the Company and/or the Buyer that affect the performance of either party's obligations under this Agreement;

25.1.2   it is not, whether directly or indirectly, the subject of any Sanctions and that it will promptly notify the Company should it become, or have reasonable cause to suspect it will become, subject to Sanctions during the term of this Agreement; and

25.1.3   it will not nominate any Vessel to receive Product or perform any of its obligations under this Agreement in violation of any Sanctions or which would put the Company in breach of any Sanctions.

25.2    If the Buyer is or becomes subject to Sanctions which affect the ability of either party to perform any Obligations under this Agreement or the performance of any aspect of this Agreement becomes Prohibted by Sanctions,  the Company may, at its sole discretion, terminate this Agreement by notice To the buyer.

25.3   The Company will have the right to reject any Vessel nomination which violates any Sanctions or puts the Company in breach of any Sanctions by serving a rejection notice on the Buyer detailing the grounds for the rejection. If the Company rejects a nomination of a Vessel on these grounds it shall be entitled, at its sole discretion, to (i) require the Buyer to promptly nominate a suitable substitute vessel; or (ii) terminate this Agreement.

25.4   The service of notice to the Buyer pursuant to Clause 22.2 or 22.3 shall not constitute a breach of this Agreement and the Company shall not be liable to the Buyer for any losses, claims, costs, expenses, damages or liabilities arising in connection with any such termination or rejection.

25.5   To the full extent permitted by applicable law, the Buyer shall indemnify the Company against any and all costs, expenses, losses and liabilities it incurs as a result of the Buyer being in breach of its obligations under this clause 22.

26.0   **Anti-Bribery and Corruption**

26.1   The Buyer represents, warrants and undertakes that it shall at all times comply with all laws, rules and regulations applicable to the Company and/or the Buyer relating to bribery, corruption and money laundering, including the Bribery Act 2010 (UK) (as amended from time to time).

26.2 The Buyer represents and warrants that it has neither paid nor received a bribe or made a corrupt payment, whether directly or indirectly, in connection with this Agreement.

26.3 The Buyer shall promptly notify the Company if, at any time during the term of this Agreement, its circumstances, knowledge or awareness changes such that it would not be able to repeat the representations and warranties set out in Clause 23.1 and/or Clause 23.2.

26.4 In the event the Buyer is in breach of this Clause 23, the Company may terminate this Agreement and the Company shall not be liable to the Buyer for any losses, claims, costs, expenses, damages or liabilities arising in connection with any such termination.

26.5 To the full extent permitted by applicable law, the Buyer shall indemnify the Company against any and all costs, expenses, losses and liabilities it incurs as a result of the Buyer being in breach of its obligations under this Clause 23.